### GIBBS ag[t] WHETCOMB

Benjamin Gibbs plaint. ags[t] Josiah Whetcomb assignee of Joseph Walters Defend[t] in an action of reveiw of an action of the case commenced by s[d] Whetcomb as Assignee afores[d] against s[d] Gibbs (for witholding a horse with bridle & saddle) at a County Court holden at Boston Octob[r] 27th 1674 & there tryed & judgem[t] granted with other due damages according to Attachm[t] Dat. January. 25° 1674.

. . . The Jury . . . founde for the Defend$^t$ costs of Court. allowed twenty Shillings. The plaint. appeal$^d$ from this judgement unto the next Court of Assistants & himselfe principall in £.5. & Anth° Checkley & Jn° Sandys Sureties in 50$^s$ apeice acknowledged themselves respectiuely bound to . . . prosecute his appeale . . . [ **313** ]

[For earlier developments in this case, see above, pp. 486, 490, 493, 512. S. F. 1424.9 is a "declaration" by Gibbs; Whetcombe's answer is in S. F. 1424.12. Gibbs's Reasons of Appeal from this second judgment against him follow (S. F. 1427.7):

Benj$^a$ Gibbs his Reasons of Apeall from the Judgment of y$^e$ Countie Court Sitting in Boston y$^e$ 27th Aprill 1675 to y$^e$ honord. Court of Assistants

Imprim$^s$ Because y$^e$ apellant humbly Conceiueth y$^t$ by y$^e$ s$^d$ Iudgment he is made uncapable to acompt any thing (Even y$^t$ which he hath y$^e$ Best right unto) to be his Own but if any person hath y$^e$ Impudence to comence an action against him for it he must imediately resigne it Least it be recovered from him w$^t$h far more Cost & Charges; for y$^e$ horse w$^t$h bridle & sadle in controversy; was made y$^e$ appellants By y$^e$ Exact observation of a court order from w$^c$h order there was noe desire of An apeale by Ioseph waters Assigner of s$^d$ horse: & thereby y$^e$ apellant Humbly conceiues: made his Propper estate without being responsable to any man therefore; else y$^e$ aprisement would proue a cheat to y$^e$ receuer w$^c$h is not to bee Imagined y$^e$ act of an honest man; much Less of an hono$^{rd}$ court of pious Christian Majestrates upon w$^c$h aprisement y$^e$ receiuer Improues and provides for y$^e$ Creature As his own & charges noe man for y$^e$ keeping thereof under w$^c$h consideration y$^e$ apellant did soe; for y$^e$ horse in controversy untill he had bin at more Cost without any Profitt y$^n$ y$^e$ said horse was worth Including what he paid y$^e$ counstable for y$^e$ same

Secondly y$^e$ Iuries oath binds them to giue a Iust verdict acording to law & evidence but he humbly conceiueth there is noe evidence in this case y$^t$ Proues y$^e$ then plantif to haue any right to y$^e$ horse in Controversy. neither doth the apellant know any law y$^t$ giues y$^e$ assigne any right unto y$^t$ which y$^e$ Assigner hath not any for a man can deriue to another [noe] more right y$^n$ he himself hath but y$^e$ Assigner of y$^e$ horse in controversy had noe legall right unto y$^e$ horse for before y$^e$ Assignement as per y$^e$ date apeareth: y$^e$ horse was made y$^e$ appellants And y$^e$ vallew thereof [w$^c$h] remained secured in his hands at y$^e$ comand of y$^e$ honored court (As he suposed towards y$^e$ Sattisfaction of his fine to y$^e$ country) soe y$^t$ when y$^e$ apellant Saw y$^e$ first atachment demanding y$^e$ horse in behalf of Iosia whettcomb assigne Vnto Ioseph waters; he Expected y$^t$ both y$^e$ assigne & assigner would haue had a severe Check from y$^e$ honord Court for y$^e$ high contempt of their athority & not himself to be cast for not obeying s$^d$ demands to pay Eight pounds or there abouts in Money as pr. y$^e$ Courts order [n°] 6: & Iosia whettcombs bill costs n°: 11: Altho the Plantiue Was informed y$^t$ s$^d$ whettcomb boasted in y$^e$ Country y$^t$ he had y$^e$ advice of three majestrates to sue y$^e$ apellant for y$^e$ horse but as y$^e$ apellant then Did soe as in dutie bound he now doth beleiue it a false & Slanderous [Report] of s$^d$ Whettcomb Corespondent to y$^e$ rest of his actions in this case and y$^t$ the court & Iury acted acording to their then understanding of y$^e$ case well Knowing And beleiueing y$^t$ Antient & devine maxime tho:

may Seeke y$^e$ Rulers favour Every Mans sentence is from y$^e$ lord; upon whose Pleasure in this concludeing Sentence he hopeth with quietness to awaite haueing bin at nere twenty pounds charge In and concerning y$^e$ procecuteing of a runaway theif & y$^e$ apendencies thereof Humbly requesting y$^e$ Iury to veiw & consider y$^e$ Evidences & concludes they will find noe Ground of Action for y$^e$ theif nor his Assigne but Iust cause to Returne y$^e$ apellant his money w$^{th}$ costs. all w$^{ch}$ he humbly comends to y$^e$ hono$^{rd}$ Court & Gentlmen of y$^e$ Iury as y$^e$ Reasons of his apeall

And Subscribes

Your Honou$^{rs}$ Humble Serv$^t$

Benj$^a$ Gibbs

These Reasons were received 2$^d$ Septemb$^r$ 1675.

per Is$^a$ Addington Cler

The gist of Whetcombe's Answer to the Reasons (S. F. 1424.8) was that, Gibbs

hauing Resaiued the mony to the full extent of the Law the now defendant doth humbly conseaiue that hee cannot haue any Just Right to the hors in controuersye: and for the greatnes of his charg it may esily apere that hee had the hors but a Litell tim before the mony was payd him. . . .

it is euident enugh that m$^r$ gibs hauig Resaud satesfactyon acording to Law without the hors hee had then no Right to the hors and that the sentens of the honerd County court hath ben performed is euident by the Resaight for y$^e$ mony vnder m$^r$ gibs his owne hand. . . .

The appeal was heard in September, 1675, by the Court of Assistants, at which one Jacob Jesson was an unwilling member of the jury. Disgusted by the want of logical and consistent principle in the regulation of this affair by the Courts hitherto, he repeatedly refused to concur with the rest of the jury in sustaining the verdict of the lower court. The result is indicated in the following order of the Court of Assistants (S. F. 1424.4):

It is ordered that Jacob Jesson giue Bond in the some of 20$^l$ for his Apperance before the Generall Court held the 13th of october next, then & there to Answ$^r$ for his non concuranc vnto the Judgment of the Bench & eleuen of y$^e$ Jury in a Case depending, And the Jury is dismist at p$^r$sent and after the Generall Court; haue giuen there Judgment concerning the said Jesson, the sayd Jury are to Attend the Court of Assistants when they are called therevnto.

Such an infringement of a juror's freedom of judgment required a protest, and Jesson made it, in the following document (S. F. 1424.10):

Boston October 13th 1675

Jacob Jesson his Reasons why he Could not Concur with the Rest of the Jury in this following Case

It Being my vnhappiness to bee at the Court of Assistants heareing of Actions tryed [the] one of the Jury did Craue to be Releast which I perceiueing did hasten out of Court but was Called back Contrary to my Desire to Supply his Place; by the then: honored Gouernour & soe was Sworne one of the Jury: to whose more

590

hard happ it fell: to haue a Case Commited to be Concerning a horse; the Occasion of which Suite was this: [*statement of facts omitted*] . . . but for my own part: I could not then nor now see any Reason for it [the judgment of the lower court] for here is A Court order for Benj^a Gibbs possessing of the Horse: but noe Court order to disposses him Soe that If gibbs should haue deliuered the Horse to Whitcomb: he is still obliged to deliuer the Horse or the value to the Court: when they shall call for [it] & how vnreasonable is it that gibbs should pay for one thing twice y^or Hono[rs] will Easily Judg: now that gibbs is Accountable to the court & none other is Euident: because he is only Betrusted By sd Court with sd Horse & the Horse not deliuered to him as part or whole Sattisfaction & this must nessesarily be owned: to bee the only intent of the Court in putting him into [his] Hands: or Elce it must Be sayd that the Court Intended own thing & ordered another: but [that] I Dare not say: but affirm that the whole purport of the order is tending [*torn*] this thing; Saying that the Constable of Lancaster: being at great Charge w[*torn*] sd Horse wee doe order he be deliuered at an apprisement vntill further order should be taken about him: forbeareing to declare that gibbs should ha[ue] the horse as A Compensation for Wrong Sustained & indeed How Could the Court grant a Judgment against sd Waters: before he had his tryall & if soe: then gibbs Could not haue the horse any other way but as A trustee Responding the Appri[se]ment when Required from the Court now Gibbs Being only A trustee he is not Responsible to any other person but those who betrusted him Waters neuer betrusted him With a horse: & therefore noe Reason to giue him such a horse The sd Waters takeing a Wrong Course: for Instead of Sueing gibbs he ought to haue made his address to [y]^e Court; who tooke his horse from him: & got there order to gibbs to deliuer him & then his Way had been Clear Either gibbs Would haue been as good as his Word: in saying vpon Sight of Such an ord^r he would deliuer the Horse: or Elce with far less trouble he would haue been made doe it; the Premises being Well Considered I Cannot Consent to find against gibbs & am Soe throughly Setled in my Judgment: that I should be absolutely forsworn: if I should find other Wise; without haueing more light aforded to mee then I Could euer see yett; & therefore wherein I am soe Culpable as to be soe Highly threatened by the Honored Gouernour & Maj^r Clark: either with a fine of neare a thousand pounds per Annum: or Imprisonment I cant see any Reason or law for it: without there be a Law: that he that will not be forsworn shall pay more then he hath or Elce be Imprisoned: but forsworne I must bee If I find against gibbs: according to the best Judgment I haue: but it may be my dissenting from the Rest of the Jury was not Soe hainously taken as dissenting from the Court: to which I answer: that whether the Court was not of my mind I will not say: but this I can say that Seuerall Honored Magistrates did declare themselues to be of the same apprehention I am of but Suppose neuer A Magistrate: had been of the same minde with my self; what Crime is it; that: that conuicts mee of: I know noe Law that Requireth Jury men to be of the same mind with the Maggistrates: nor noe oath that is giuen to vs to oblige vs soe; but this I know that: Jury men doe take oathes to giue in A Just Verdict According to Law & Euidence: which can bee vnderstood noe otherwise then According to their Best Judgment: & not According to the Judgment the bench is off; for if that should bee the mean[ing] of [the] oath then the Jury are not Judges but the bench which is in Effect to [*torn*] vs of all our Libertie: & to take the power out of our Hands: which the [*torn*] giuen vs: for it: for the Law Sayth a Jury of twelue

men shall try Cases & their [*torn*] shall stand: although the bench doth not Agree to it: & the Reason is A Jury [*torn*] the plantifes & defendants peers: But the bench are not their peers: & therefore to make a Jury Say as y$^e$ bench sayth is to mock the Law & to make Jury men but noses of Wax: which thing is soe vnreasonable that none will plead for it: Soe that Seeing as A Jury man I am not Required to be of the same minde with a Court but according to my own Judgment to act & doe (the Law haueing prouided A Remedy in Case any Jury Should goe Contrary to Law) I Cant Judg what Reason there can Bee giuen: why I Should Be thus highly punnished in being bound ouer to A generall Court which Causeth my Reputation to Come in Question for sayth vox populi if he had Not Commited some hainous transgression he would not haue been bound ouer to this Court & besides A great Losse to me & if the Court would but Consider the great vexation of spirit: this Business hath Caused mee in soe much that the Loss of some hundreds of pounds: hath not occasioned; and all because I cant make my Concience Buckele Like a twig & Say the sun shins when I know its only moon light soe Desireing the Honored Court to Remember that there is noe breach of Law pleaded against mee nor non haue I Broke: & therefore indeed ought not [in] my Judgment to haue been Bound ouer: if I vnderstand what the first Law in the Lawbooke sayth: that noe mans good name shall Be taken away nor his estate: nor bee any ways punished: but by vertue of Some Express Law of this Co[unt]ry Legally published: now if any such Law I haue Broke: the Court doubtlese would haue cited it & Conuicted mee: but noe such Law Being transgrest I hope I may thinke without offence: I haue harder Measure meeted to mee then the Law doth allow; & therefore to this Honoured Court I would Humbly make my Request that you would vindicate my Creditt: which hath Been stained: & Aquit me from this Jury & Consider the needles trouble I haue been put to
& Soe I shall remaine your
honors humble serv$^t$     Jacob Jesson

By this means the case of the horse and porringer had come to involve the liberty of the subject and the right of jurors to dissent. No reference to the case of Jesson will be found in the official Records of the General Court; the intention of the authorities to keep it out of the public records is evident. But in the docket of this case is a copy of the following judgment of the General Court (the highest Court in the Colony) on 18 November 1675 (S. F.1424.16):

This Court haueing considered the case of m$^r$ Jacob Jesson bound over to this court from the Court of Assistants for his wilfull & pertinacious opposeing, & vnreasonable refuseing to Concurr w$^{th}$ the Bench & Eleven of the Jury in the Case between m$^r$ Benj$^a$ Gibbs & Josiah Whetcom together w$^{th}$ those high refections, & abusive Exp$^r$ssions in his declaracion given in to this Court tending to the debaseing Authority amongst us, doe Adjudge the Said Jacob Jesson to be publiquely admonished & to pay the Summe of tenn pounds in money as a fine to the Country, & to stand Committed till this Sentence be performed, the Deputyes haue past this o$^r$ Hono$^{rd}$ Magists Consenting hereto
William Torrey Cleric

18.9: 1675
Consented to by y$^e$ magists Edw: Rawson Secret

This case is an interesting parallel to Bushell's case, in England, which established the juror's right to independent judgment almost contemporaneously. Bushell's case grew out of the trial of William Mead and William Penn. See Thayer, Preliminary Treatise on Evidence, p. 166, and a recent reprint of the trial,[1] in which expressions at times strikingly similar to those of Jesson were employed to greater effect.]

---

[1] Don C. Seitz, editor, The Tryal of William Penn and William Mead for Causing a Tumult. Boston, 1919. Cf. New England Quarterly, v. 812–818.